State, Jewell, Pros., v. Hart.

---

THE STATE, WILLIAM L. JEWELL, PROSECUTOR, v. GEORGE F. HART, COLLECTOR OF HOPEWELL.

1. A stockholder in a national bank, whose capital is invested principally in United States bonds, may be taxed by the laws of the state only for such proportion of the amount of his shares as is not made up of the value of said bonds.
2. When taxed for the whole under the act of congress, the tax shall be assessed upon "the valuation of personal property in the assessment of taxes imposed by state authority, at the place where such bank is located, and not elsewhere." The term *place*, in this connection, means the municipal district, however small, which, having the power of taxation, imposes the tax.

On *certiorari*. In matter of taxation.

The following statement of facts was agreed to by the counsel of the parties:

" In the personal property of the prosecutor taxed in this case, is included seventeen shares of the capital stock of the First National Bank of Trenton, New Jersey, of one hundred dollars each, making seventeen hundred dollars, on which the tax is $32\frac{88}{103}$. This amount is unpaid. The residue of the prosecutor's tax is paid. The stock of the First National Bank aforesaid was not assessed or taxed against or on the bank as a corporation. Is this stock of the First National Bank of Trenton, New Jersey, taxable in the hands of the prosecutor, the owner thereof, in the township of Hopewell? The said owner of said stock refused to pay the said tax assessed on said bank stock, as not taxable in his hands in said township, as an individual stockholder.

" The quarterly statement of said bank, dated October 3d, 1864, marked *Exhibit A* in this cause, it is agreed shows the amount of the capital stock of said bank, and the amount of United States bonds held by the bank at the time said tax was assessed.

" Said bank was organized under .the national banking law, approved February 25th, 1863, and its business is carried on and transacted in the city of Trenton."

The case was argued before the CHIEF JUSTICE, and Justices ELMER and VREDENBURGH, by *A. G. Richey*, for the plaintiff in *certiorari*, and *A. Dutcher*, for the defendant.

The opinion of the court was delivered by

ELMER, J. It is, in my opinion, carrying the principle to its extreme, if not beyond its reasonable limit, to hold banking institutions, constituted by virtue of the act of congress entitled " an act to provide a national currency, secured by a pledge of United States bonds and to provide for the circulation and redemption thereof," to be instruments

necessary and proper for carrying into effect the powers vested in the general government, as the Supreme Court of the United States held the old Bank of the United States to be. That they are entitled to be so considered, was conceded by the counsel of both parties on the argument in this case; and it may be safely assumed that such will be the established construction of the constitution. So considered, these instruments are no more subject to the taxing powers of the state governments than the mint, or any other department of the public administration.

But it does not follow as a necessary consequence of these institutions, being free from taxation or any other control by the state, that the property of individuals which the government has authorized to be vested in and to constitute their shares of stock, cannot be taxed in common with and to the same extent as the other property of such individuals. It was distinctly announced as the opinion of the Supreme Court of the United States in the case of *McCullough* v. *Maryland*, 4 *Wheat.* 316, that the shares of the old bank could be so taxed, and there has been no intimation since of a desire to modify this opinion, so evidently just in itself and so important to the respective states, especially now that almost the entire banking capital of the nation is to be invested in national and not in state banks.

It has indeed been held in this state, that a tax on the shares of stockholders of a corporation is virtually a tax on the property of the corporation itself, differing only in the mode of assessment; and I see no reason to doubt the correctness of the principle in cases where the question is, as in all the decided cases, whether a law exempting a corporation from taxation does not also, by fair implication, exempt the individual corporators from the same tax. As I had occasion to remark in the case of *The State* v. *Bentley*, 3 *Zab.* 539, any other construction would make the exemption illusory and of no practical importance. But the question now is entirely different. No constitution or law exempts banks instituted by the general government, in terms from

the general power of taxation remaining in the states; they are held to be exempt, only so far as taxation can be considered as tending to impede their existence or operations, as institutions necessary and proper for governmental purposes. The exemption is a necessary inference from the relative position of a government, all whose constitutional laws are made the supreme laws of the land, and therefore paramount to state laws. But we are not warranted in pushing the inference beyond its reasonable limits. A tax directly on the corporate institutions, we cannot help seeing, would be a tax on the operation of instruments employed by the government of the Union to carry its powers into execution. A tax on the property of the individual corporators, vested in said institutions and deriving a large part of its value from a business having no connection with the government, in common with other property of the individual, can have no such effect, any more than a tax on carriages and horses, or railroads employed in carrying the mail, can be said to interfere with the exclusive right of the general government to establish post offices and post roads.

The prosecutor of this *certiorari*, who was a resident of the township of Hopewell, in the county of Mercer, was taxed in that township for the value of certain shares of stock owned by him in the First National Bank of the city of Trenton, located in that city. It appears that the capital of the bank was mostly but not entirely, vested in United States bonds, deposited to secure its circulation.

Independently of the fact that the capital of the bank was partly vested in United States bonds, which are not subject to state taxation, I should have felt no difficulty in holding that the shares of stock were taxable under the laws of this state, to the respective stockholders in common with their other property, and that the right so to tax them or the mode of doing it, did not depend upon the act of congress. But it was held by this court in the case of *The Newark City Bank* v. *The Assessor of the First Ward of Newark*, 1 *Vroom* 13, and has since been authoritatively settled by the

Supreme Court of the United States in the case of *Bank of Commerce* v. *New York City*, 2 *Black* 620, that under a state law taxing the capital of a bank according to its full valuation, that portion of its capital vested in United States bonds, was not liable to bear any proportion of the burthen. Considering a tax on the stock of the corporators as substantially the same thing, so far as regards the exemption of property, as a tax on the corporation itself for the amount of the property it holds, I think such part of the value of the prosecutor's shares as consisted of the value of the United States bonds, was not liable to be assessed, unless it was made so by the act of congress itself.

The forty-first section of that act contains the following provisions: "Provided, that nothing in this act shall be construed to prevent all the shares of any of the said associations held by any person or body, from being included in the valuation of personal property of such person or corporation, in the assessment of taxes imposed by and under state authority, at the place where such bank is located and not elsewhere, nor at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state; provided further, that the tax so imposed under the laws of any state upon the shares of the association authorized by this act, shall not exceed the rate imposed upon the shares of any of the banks organized under authority of the state where such association is located; provided also, that nothing in this act shall exempt the real estate of associations from either state, or county, or municipal taxes to the same extent, according to its value as other real estate is taxed."

By virtue of these provisions the shares are authorized to be taxed at their full value, however that value may be constituted, be it wholly from bonds or partly, as it may be and generally is, from other property; but they are required to be taxed in a particular manner and at no greater rate than is assessed upon other moneyed capital, nor at a greater rate

than is imposed upon the shares of any of the banks organized under the authority of the state.

The prosecutor was taxed and could only be taxed, as the laws of the state then stood, for his proportion of the state, county, and township taxes in the township where he resided. This raises the question, what is meant by the restriction in the act of congress that the tax shall be assessed upon "the valuation of personal property in the assessment of taxes imposed by and under state authority, at the place where such bank is located, and not elsewhere." The word "place" has a very wide and varied signification, so that its precise meaning can only be determined by the connection in which it is used, and by having regard to the apparent purpose of the author. As applied to the location of a bank, it may mean the precise spot where the banking-house is erected, or the street on which or the city or town in which it is situated, without regard to any special boundaries, or the state, county, city, or municipal district, within whose limits and subject to whose police or other regulations it transacts its business.

It is agreed in the case under discussion, that place, as used in this law, refers to some state, county, or municipal district having a right to impose taxes. By the counsel for the prosecutor it is insisted that no taxes can be imposed but in one district, and that this must be the smallest district established by the laws of the state. For the defendant it is insisted that the place meant is the district imposing the particular tax in question; that is to say, in the case of taxes uniform throughout the state it is the whole state, in the case of county taxes the whole county, and in the case of local taxes of whatever nature, the district for whose special use they are imposed. This latter is, in my opinion, the true construction. The precise language is, that the valuation shall be "in the assessment of taxes imposed at the place;" that is, the district, larger or smaller, which imposes them, including thus the state if they are state taxes, the county if they are county taxes, and any lesser district, as the case

may be. It is not declared or implied that there shall be but one assessment or one tax.

This construction, I think, fulfils the apparent purpose of the restriction, which probably was to prevent different stockholders of the same bank from being taxed at different rates, as they might be if they were allowed to be taxed in every district where they happened to reside, for the local taxes, which vary in different localities. The other construction meets this difficulty; but besides that it departs from the proper and natural meaning of the language employed, it limits the discretion of the state authorities in regulating the mode of assessing taxes beyond the reasonable purposes intended. If it happens to be the policy of any state to tax the moneyed capital of its citizens, or of others who use it in carrying on business within the limits of the state, so as to enjoy the protection of its laws by means of state officers, at a common rate throughout the state, we cannot suppose that it was intended by congress, to prevent the shares of stock in the national banks throughout the state from being included; and so in the case of county taxes, they would reasonably include the banks in the county. In both these cases the taxes are imposed at the place where the bank is located, and all the stockholders will be taxed equally.

Nor will the construction I hold to be the best, interfere with the right of the state to require all the stockholders, whether they reside at the place of taxation or elsewhere, in or out of the state, to be equally taxed. The law of this state, as it existed when the taxes in question were assessed, did not authorize this to be done; but the whole subject of the manner of assessing and collecting the taxes is left, as it ought to be, to the discretion of the state authorities, if they take care not to discriminate against the holders of stock in the national banks, in favor of moneyed capital otherwise invested or of stockholders in the state banks. If permitted to do this, they might assume to control institutions deemed important for the purposes of the general government. The result, as applied to this case, is, that so much of the tax

assessed to the prosecutor as was for township purposes, and was assessed on the value of his shares vested in United States bonds, was illegal and must be set aside.

As to that portion of his tax assessed for county and state purposes, it is correct, if the other proviso which requires that the tax imposed, shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the state, has not been infringed. I think it has not. According to the provisions of the state law, the tax on the stock of state banks was imposed directly on the banks; but upon the principles I have before stated, this must be held to be substantially a tax on the shares of the stockholders. The stock of the state banks located in the county of Mercer, was taxed as high, if not higher, than the stock of this national bank, because the bank was assessed not only on its actual capital paid in, but on its accumulated surplus, thus including the property which made up the value of the shares. The taxes assessed to the prosecutor for county and state purposes, in my opinion, should be affirmed, and so much of the township tax as was assessed on the value of his shares not vested in United States bonds should also be affirmed, and the balance of the township tax reversed and set aside.

CITED in *State* v. *Haight, Collector,* 5 *Vroom* 130.